1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT
9           SOUTHERN DISTRICT OF CALIFORNIA
10

11   PAIGE PETKEVICIUS, on behalf of        Case No.:  3:14-cv-02616-CAB-(RBB)
     herself and all others similarly situated,
12                                          **ORDER DISMISSING CASE FOR**
                                   Plaintiff, **LACK OF SUBJECT MATTER**
13                                          **JURISDICTION**
     v.
14
     NBTY, INC., et al.,
15
                                 Defendants.
16

17

18        This matter is before the Court following an order to show cause as to the Court's

19   subject matter jurisdiction.  Both parties responded in writing to the Court's order, and the

20   Court held oral argument on March 24, 2017.  For the reasons set forth below, the case is

21   dismissed for lack of subject matter jurisdiction.

22        **I.    Background**

23        This case arises out of Defendants' alleged false statements about the health benefits

24   of Gingko biloba.  It originated as two separate lawsuits.  On October 17, 2014, Plaintiff

25   Paige Petkivicius filed a complaint against Defendant Rexall Sundown, Inc. ("Rexall") that

26   was assigned case number 14-CV-2482-CAB-RBB in this Court (the "Rexall Complaint").

27   This Rexall Complaint alleged that Rexall manufactures Gingko biloba products and that

28   the labels of those products falsely represent that Gingko biloba "supports healthy brain

function," "helps support memory, especially occasional mild memory problems associated with aging," and "helps maintain healthy circulation."  [Case No. 14cv2482, Doc. No. 1 at ¶¶ 1-3.]  In reality, according to the complaint, "[a]ll available, reliable, scientific evidence demonstrates that the Gingko biloba products have no efficacy at all . . ." [*Id.* at ¶ 2 (emphasis in original).]  The Rexall Complaint asserted claims for (1) violation of California's unfair competition law (the "UCL"), California Business & Professions Code § 17200 *et seq.*, (2) violation of California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*, and (3) breach of express warranty, on behalf of a putative multistate class of purchasers of Rexall's Gingko biloba product.  [*Id.* at ¶ 36.].  The prayer for relief asked for actual, punitive and statutory damages, restitution, disgorgement, declaratory and injunctive relief, and attorneys' fees and costs.  [*Id.* at pp. 17-18.]

The Rexall Complaint stated that the "Court has original jurisdiction pursuant to [the Class Action Fairness Act ("CAFA"),] 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant."  [*Id.* at ¶ 7]  The complaint also alleged that Plaintiff is a California citizen [*Id.* at ¶ 10], while Rexall is a Florida corporation with its principal place of business in New York [*Id.* at ¶ 12].  The complaint alleged that Petkevicius paid approximately $18.00 for the Gingko biloba product she purchased [*Id.* at ¶ 11], and that the putative class members "have been harmed in the amount they paid for the product."  [*Id.* at ¶ 5.]  The complaint did not contain any factual allegations as to the total damages suffered by the putative class, but alleged that "Rexall manufacturers, advertises, markets and distributes Ginkgo Biloba products to thousands of customers across the country." [*Id.* at ¶ 13.]

Several weeks later, on November 3, 2014, Petkevicius initiated this action with a complaint against Defendants NBTY, Inc. and Nature's Bounty, Inc. (the "Nature's Bounty Complaint").  The Nature's Bounty Complaint was almost identical to the Rexall

2

Complaint.  Plaintiff alleged that NBTY and Nature's Bounty manufacture Gingko biloba products and make identical or almost identical false statements about the health effects of those products.  It contained the same jurisdictional allegations, defined the multistate class similarly, asserted identical claims, and prayed for the same relief.

Nature's Bounty and Rexall are both indirect wholly-owned subsidiaries of NBTY [Doc No. 7; Doc. No. 9 in 14cv2482.], and they are all represented by the same counsel.  On December 19, 2014, the three entities jointly moved the Judicial Panel on Multidistrict Litigation to consolidate Plaintiff's two lawsuits with a third lawsuit filed by Alison Wilson against Nature's Bounty and NBTY that was pending in the Central District of California. [Doc. No. 3.]  The motion asserted that all three lawsuits "share a central factual issue— whether Plaintiff can establish through scientific studies or otherwise that the Gingko biloba product claims are false. . . ."  [Doc. No. 3-1 at 12.]  On April 2, 2015, the MDL Panel denied Defendants' motion.  [Doc. No. 16.]

While Defendants' motion before the MDL panel was pending, Petkevicius and Wilson jointly filed the first amended complaint ("FAC") in this action.  [Doc. No. 11.] The FAC named NBTY, Nature's Bounty and Rexall as defendants and was based on the same or similar allegations of false and misleading statements on the labels of Gingko biloba products about its effectiveness.  Like the prior complaints, the FAC claimed the Court has jurisdiction pursuant to CAFA and that "the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs."  [*Id.* at ¶ 9.]  The FAC repeats the allegation that the putative class was "harmed in the amount they paid for the Gingko biloba products", [*Id.* at ¶ 7], but unlike the Nature's Bounty and Rexall Complaints, the FAC is silent as to the amounts Petkevicius and Wilson paid for the products in question.  The FAC adds an allegation that "Defendants sell thousands of units of the Gingko biloba Products nationally per month . . . ."  [*Id.* at ¶ 28.]

The FAC identified four products marketed and distributed by Nature's Bounty, and two products marketed and distributed by Rexall.  [*Id.* at ¶¶ 15-16.]  The FAC alleges that NBTY manufactures and markets all of the Gingko biloba products in question.  [*Id.* at ¶

14.]  The FAC also alleges that each defendant "was the agent, employee, representative, partner, joint venture, and/or alter ego of the other Defendants . . ." in connection with the alleged wrongdoing.  [*Id.* at ¶ 17.]  It stated that Plaintiffs sought to represent two classes, a California class, and a multistate Class.  [*Id.* at ¶ 60.]  The FAC asserted three separate UCL claims (one each for unlawful, unfair, and fraudulent business practices), a CLRA claim, a claim under California's False Advertising Law ("FAL"), California Business & Professions Code § 17500 *et seq.*, and a breach of express warranty claim, and prayed for the same relief as the original Rexall and Nature's Bounty Complaints.  On February 10, 2016, the parties stipulated to the dismissal of Wilson's claims against Defendants, leaving Petkevicius as the only representative plaintiff.

On September 15, 2016, the Court granted Defendants' motion to dismiss the FAC's injunctive relief claims and the claims on behalf of a multistate class for lack of Article III standing.  [Doc. No. 79.]  The order gave leave to amend to renew the multistate claims with a new named plaintiff who had standing, but no amendment was filed.  Petkevicius then filed a motion to certify only a California class.

Upon review of the briefs and evidence related to Plaintiff's motion to certify a California class, it became apparent to the Court that Defendants' California retail sales of Gingko biloba products at the time the original complaints were filed may not have exceeded $5,000,000.  Accordingly, the Court ordered Plaintiff to show cause as to why the case should not be dismissed for lack of subject matter jurisdiction.  The order instructed Plaintiff to address: (1) the relevant time period for calculating the amount in controversy; (2) what amounts should be included in the amount in controversy, including whether amounts related to the claims dismissed for lack of standing should be included; and (3) if the amount in controversy is only equal to the California retail sales of the class products within the class period at the time the complaint was filed, whether the $5,000,000 requirement is satisfied.  Both parties responded in writing to the Court's order arguing that CAFA's jurisdictional minimum is satisfied.

## II.   Discussion

Although both parties argue that the CAFA jurisdictional minimum is satisfied, they do so on slightly different grounds.  Defendants argue: (1) that the amounts attributable to the multistate class that the Court dismissed for lack of standing should be included in the amount in controversy; and (2) that even if only the California class damages are considered, the Court should include damages related to putative class member purchases that occurred after the complaint was filed, which, along with attorneys' fees, would put the total amount in controversy over $5,000,000.  For her part, Petkevicius does not argue that damages attributable to the multistate class should be included in the amount in controversy.  Instead, she argues, like Defendants, that the relevant amounts for calculating the amount in controversy include damages related to purchases after the complaints were filed.  In addition, Petkevicius argues that punitive damages and attorneys' fees must be included in the calculation.

### A.   Burden of Proof for CAFA Jurisdiction

Pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), federal district courts have original subject matter jurisdiction over class actions in which a member of the plaintiff class is a citizen of a state different from any defendant and the aggregate matter in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. § 1332(d)(2).   The only question here is whether the amount in controversy exceeded $5,000,000 when the lawsuit was filed.

The overwhelming majority of decisions concerning CAFA jurisdiction involve cases removed to federal court by defendants.  This is likely because most class action defendants prefer to be in federal court and therefore do not contest subject matter jurisdiction in the rare instances where a plaintiff files a state law class action in federal court.[1]  Thus, while the law applicable to determining the existence CAFA jurisdiction in

---

[1] If anything, class action defendants' general preference for federal court should cause courts to be particularly vigilant in evaluating and questioning jurisdiction over class actions originally filed in federal

the context of a motion to remand filed by a plaintiff has become clearer in recent years, there is hardly any authority evaluating the existence of CAFA jurisdiction in class actions originally filed in federal court.

To remove a case pursuant to CAFA, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). "But evidence establishing the amount is required where . . . defendant's assertion of the amount in controversy is contested by plaintiffs.  In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (citations and internal quotation marks omitted).  "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." *Ibarra*, 775 F.3d at 1198.  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions." *Id.* at 1197.  Usually, "[t]he removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009).  However, "Congress intended CAFA to be interpreted expansively." *Ibarra*, 775 F.3d at 1197.  Thus, "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart*, 135 S. Ct. at 554.

---

court pursuant to CAFA because if the Court does not critically consider amount in controversy allegations, no one will.  Assuming the existence of CAFA jurisdiction simply because the defendant does not raise the issue effectively amounts to subject matter jurisdiction by consent, which is not permitted. *See generally Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (noting that "no action of the parties can confer subject-matter jurisdiction upon a federal court.  Thus, the consent of the parties is irrelevant . . . ."); *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1095 (9th Cir. 1985) ("[T]he parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction.").

3:14-cv-02616-CAB-(RBB)

Of course, this case was originally filed here, not removed by the defendant.  Thus, Plaintiff argues that her burden is less than that faced by a defendant seeking to remove a class action based on CAFA.  The Court disagrees and holds Plaintiff to the same burden for establishing CAFA jurisdiction as it would hold a defendant who removed the case to this Court and faced a motion to remand from the plaintiff.  In other words, the Court evaluates the allegations related to the amount in controversy in the complaint here in the same manner as it would evaluate contested jurisdictional allegations in a notice of removal that the amount in controversy exceeded $5,000,000.

Although "the plaintiff's amount-in-controversy allegation is accepted if made in good faith," *Dart,* 135 S.Ct. at 553, "when the amount in controversy is contested, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'"  *Harris v. CVS Pharmacy, Inc.*, No. EDCV1302329ABAGRX, 2015 WL 4694047, at *3 (C.D. Cal. Aug. 6, 2015) (quoting *Dart*, 135 S.Ct. 547, 550 (2014)).  Because most opinions addressing disputes about the amount in controversy in a CAFA case are prompted by a motion to remand, case law concerning CAFA jurisdiction typically results from plaintiffs contesting a defendant's allegations as to the amount in controversy.  However, "Federal Rule of Civil Procedure 12(h)(3) provides that a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action . . . ." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

The Rexall Complaint, the Nature's Bounty Complaint, and the operative FAC, which combined the claims from the Rexall and Nature's Bounty Complaints along with those made by Wilson, all contain conclusory allegations that "the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs."  [Doc. No. 11 at ¶ 9.] This threadbare recitation of the amount in controversy element for subject matter jurisdiction under CAFA is insufficient, without more, to establish the Court's subject matter jurisdiction.  *Kachi v. Natrol, Inc.*, No. 13cv0412 JM (MDD), 2014 WL 2925057, at *7 (S.D. Cal. Jun. 19, 2014).  In other words, simply stating that the amount in controversy

exceeds $5,000,000, without any specific factual allegations as to the actual amount sought by the plaintiffs does not constitute a good faith allegation of the amount in controversy any more than an allegation that "the parties are diverse" would be sufficient to establish the requisite diversity absent specific allegations of the citizenship of the parties. The FAC therefore does not contain any good faith factual allegations as to the amount in controversy. Indeed, based on the lack of sufficient plausible factual allegations in the FAC as to the amount in controversy, Plaintiff did not meet her burden to establish federal CAFA jurisdiction at the outset. To hold otherwise, would essentially give any class action plaintiff license to file a claim in federal court simply by stating the legal conclusion that CAFA jurisdiction exists.

Regardless, based on the evidence submitted in connection with Plaintiff's motion to certify the class, the Court, pursuant to Rule 12(h)(3), raised the question of whether $5 million was in controversy as required for CAFA jurisdiction. Plaintiff is therefore in the same position as a defendant whose statement of the amount in controversy in a notice of removal has been contested by a plaintiff in a motion to remand.

Relying on *Bayol v. Zipcar, Inc.*, No. 14-cv-2483-TEH, 2015 WL 4931756, at *5-7 (N.D. Cal. Aug. 18, 2015), Plaintiff argues that her "burden is minimal and the plaintiff needs only establish there 'is not a legal certainty that the class will not recover more than $5 million.'" [Doc. No. 155 at 3.] The *Bayol* opinion actually phrased the burden slightly differently, holding that because the plaintiff's amount in controversy was contested, the plaintiff had the "burden of showing a legal possibility that she and her proposed class might recover more than $5 million." *Bayol*, 2015 WL 4931756, at *7. This standard is not necessarily inconsistent with *Ibarra* and *Dart*, but to the extent it does conflict, *Ibarra* and *Dart* are binding. Ultimately, Plaintiff, as the proponent of jurisdiction, "has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements of CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." *Ibarra*, 775 F.3d at 1197; *see also St. Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 287 n.10 (1938) ("It is plaintiff's burden

8

both to allege with sufficient particularity the facts creating jurisdiction, in view of the nature of the right asserted, and, if appropriately challenged . . . to support the allegation."); *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013) (holding that removing defendant "must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum."). Further, like a removing defendant, Plaintiff cannot satisfy this burden using "mere speculation and conjecture, with unreasonable assumptions." *Ibarra*, 775 F.3d at 1197. Accordingly, if based on evidence put forward by Plaintiff, it is legally possible based on the factual allegations in the complaint for the class to recover more than $5 million, CAFA's jurisdictional minimum is satisfied.

With these standards in mind, the Court turns to the parties' various arguments as to what categories of damages should be included in the amount in controversy.

## B.    Economic Damages

Plaintiff alleged in the original complaints and the FAC that the class members were "harmed in the amount they paid for the Gingko biloba products." Thus, both parties argue, and the Court agrees, that the proper measure of this harm for calculation of the amount in controversy is the dollar amount of Defendants' retail sales of the products. The Court's questions, however, concern which retail sales figures should be included. Specifically, those questions are (1) whether sales attributable to the multistate class claims that were dismissed for lack of standing, and (2) whether sales that had not occurred when this lawsuit was filed, are part of the amount in controversy for determination of CAFA jurisdiction.

### 1.  Damages Attributable to Multistate Class Claims

The FAC stated claims on behalf of both a California class and a multistate class. However, the Court dismissed the multistate claims for lack of standing. Standing, like the amount in controversy, is a requirement for subject matter jurisdiction. Thus, in the order to show cause, the Court cited the holding in *Harris v. CVS Pharmacy, Inc.*, No. ED CV 13-2329-AB (AGRx), 2015 WL 4694047 (C.D. Cal. Aug. 6, 2015) for the proposition that

a plaintiff may not rely on claims for which she lacks standing to satisfy CAFA's amount in controversy requirement. *See Harris*, 2015 WL 4694047, at *5 ("Absent any standing to invoke Rhode Island law, the Court lacks jurisdiction to entertain Plaintiff's claims under the RIDTPA, and Plaintiff cannot rely on the RIDTPA's statutory damages provision to satisfy CAFA's $5,000,000 amount-in-controversy requirement.").

In their response to the OSC, Defendants argue that *Harris* conflicts with Ninth Circuit and Supreme Court precedent that events occurring after the case was filed (or removed) "which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached." *St. Paul Mercury*, 303 U.S. at 293. The flaw in Defendants' argument is that neither Petkevicius nor Wilson ever had standing to represent a multistate class, which means that this Court never had subject matter jurisdiction over the multistate class claims. That the claims were not dismissed for lack of standing until long after the case was filed is of no moment. Indeed, Defendants even labeled their motion to dismiss for lack of jurisdiction as a facial attack on the FAC, meaning that they were asserting that the allegations in the FAC were "insufficient on their face to invoke federal jurisdiction." [Doc. No. 59-1 at 5] (quoting *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Thus, no event occurred after the case was filed to oust the Court of subject matter jurisdiction over the multistate claims. Rather, the Court *never* had jurisdiction over those claims. The Court's dismissal of the multistate claims did not reduce the amount recoverable by a class represented by Petkevicius because amounts related to the multistate claims were never within the Court's jurisdiction in the first instance. Accordingly, the parties cannot rely on damages related to the multistate claims to satisfy CAFA's $5,000,000 amount-in-controversy requirement. *Harris*, 2015 WL 4694047, at *5; *cf. Polo v. Innoventions Int'l, LLC,* 833 F.3d 1193, 1197 (9th Cir. 2016) (holding that case removed under CAFA should have been remanded instead of dismissed after finding that the plaintiff lacked standing because "when federal jurisdiction is absent from the commencement of a case, a putative class action is not properly removed—and therefore need not stay removed. This case

1  lacked a named plaintiff with Article III standing, and therefore was not properly

2  removed.") (internal citations and quotation marks omitted).

3          **2.  Damages Attributable to Sales That Had Yet to Occur When the**

4              **Case Was Filed**

5          Both parties argue that the amount in controversy includes damages attributable to

6  retail sales that occurred after the complaints were filed.  This position is not reconcilable

7  with the well-settled authority that "the jurisdiction of the court depends upon the state of

8  things at the time of the action brought." *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541

9  U.S. 567, 570 (2004).  Just as "post-filing developments do not defeat jurisdiction if

10 jurisdiction was properly invoked as of the time of filing," (*Visendi v. Bank of Am, N.A.*,

11 733 F.3d 864, 868 (9th Cir. 20130 (citation omitted)), post-filing events cannot create

12 jurisdiction where it did not exist at the time of filing.  That it took Plaintiff more than two

13 years to move for class certification does not allow for an increase in the amount in

14 controversy at the time the complaints were filed.  Put another way, if the parties had

15 reached a settlement the day after the complaints were filed, amounts related to purchases

16 that have occurred over the past two years would not (and could not) have been included.

17 The determination of the amount in controversy for jurisdictional purposes must be the

18 same now as it would have been if Defendants had filed a motion to dismiss for lack of

19 CAFA jurisdiction at the outset.

20         Retail sales that occurred after the complaint was filed are not "future damages"

21 attributable to the wrongful conduct alleged in the complaint (alleged misrepresentations

22 on the labels of the products purchased before the complaint was filed).  Such sales are

23 new damages arising out of new, albeit similar, wrongful conduct (alleged

24 misrepresentations on the labels of the products purchased after the complaint was filed).

25 Claims arising out of any harm that occurred based on sales after the complaint was filed

26 did not accrue until after the complaint was filed.  At the time the complaint was filed, it

27 was merely speculative that any future retail sales would occur.  Upon being served with

28 the complaints, Defendants could have changed the labeling on their products or stopped

selling the products altogether, or the public could simply stop purchasing Gingko biloba products or choose to purchase Gingko biloba products from Defendants' competitors.  In any of these scenarios, there would be no additional damages to the class that could be included in the jurisdictional minimum or much lower additional damages.  When the complaint was filed none of these damages existed, and at that time, it would have been entirely speculative to include such amounts in the amount in controversy.  Therefore, damages arising out of such sales are not part of the amount in controversy calculation under CAFA.  *See Hughes v. McDonald's Corp.*, No. C 14-1700 PJH, 2014 WL 3797488, at *2 (N.D. Cal. July 31, 2014) (declining to include "future damages" in the amount in controversy in wage and hour class action noting that courts "have rejected similar attempts, concluding that it is not reasonable for a defendant to assume that it will continue to violate the Labor Code to the same degree even after the filing of the complaint.") (internal quotation marks omitted).[2]

The cases on which Defendants rely are distinguishable.  In those cases, the "future damages" were certain damages were caused by actions of the defendant from before the case was filed.  For example, *Steel v. United States*, 813 F.2d 1545 (9th Cir. 1987), the Court found the amount in controversy requirement satisfied in a non-CAFA diversity case where the plaintiff sought declaratory relief concerning past and future pension payments. Unlike the case here, the existence of and amount of those payments was certain when the

---

[2] Plaintiff ostensibly attempts to distinguish *Hughes* because in labor law cases, "the filing of the lawsuit puts the defendant on notice and makes it unlikely for the defendant to continue to risk violating the law to the same degree."  [Doc. No. 155 at 3.]  Defendants here, however, were also put on notice by the filing of the lawsuit, and they had equal opportunity to change their behavior.  Indeed, if anything, in certain circumstances the inclusion of estimated future wages may be more reasonable in wage and hour cases than in consumer class actions because to the extent the employee class members are still employed, those future wages may be a proper measure of the value of any declaratory or injunctive relief sought by the class and therefore might be properly included in the amount in controversy.  In contrast, here the Court dismissed Plaintiff's injunctive relief claims for lack of standing on the grounds that Petkevicius could not suffer future harm as a result of the alleged wrongful conduct of Defendants.

1  complaint was filed, and the plaintiff's claim for future pension payments was based on

2  agreements made before the lawsuit was initiated.

3      Defendants also cite to *Faltaous v. Johnson and Johnson*, No. CIV.A. 07-1572JLL,

4  2007 WL 3256833, at *9 (D.N.J. Nov. 5, 2007), which is another wage and hour case, for

5  the proposition that "while the amount in controversy is determined through consideration

6  of the good faith allegations of the complaint at the time it was filed, damages accruing in

7  the future are properly counted against the jurisdictional amount if 'the right to future

8  payments . . . will be adjudged in the present suit.'" This holding conflicts with *Hughes*,

9  which the Court finds more persuasive, but even assuming that this is an accurate statement

10 of the law the class claims here are distinguishable. The complaint here does not seek a

11 declaration as to the right to future payments for the class as it existed when the case was

12 filed; it seeks restitution of amounts paid for the class products. When the complaint was

13 filed, the sales that had not already occurred were not inevitable, and any consumers who

14 had never purchased Defendants' products before the case was filed were not even

15 members of any putative class. If a plaintiff were allowed to speculate as to damages

16 related future wrongful conduct to obtain CAFA jurisdiction, the $5,000,000 minimum

17 would be satisfied with little more than rank speculation about possible future injuries

18 caused by future conduct of the defendant.

19      Plaintiff's arguments and authority for the inclusion of post-complaint sales are

20 equally unpersuasive. Plaintiff argues that because "the complaint contains an allegation

21 of 'continuing damage', future damages are properly included in the calculation of the

22 amount in controversy." [Doc. No. 155 at 3.] First, the FAC does not allege any

23 "continuing damage" to the putative class arising out of conduct that had occurred as of

24 the time the complaint was filed. To the contrary, the FAC alleged that class members'

25 harm was the amount they paid for the class products, which was not continuing. Although

26 the FAC alleges that Defendants continue to sell products in California, those sales, in and

27 of themselves, do not constitute "continuing damage" to the class or to Petkevicius in

28 particular.

The cases on which Plaintiff relies are distinguishable.  *Broglie v. MacKay-Smith*, 541 F.2d 453, 455 (1976), was a non-CAFA diversity case where the complaint sought damages related to the cost of care of a lame horse that the plaintiff's had purchased from the defendant.  The plaintiffs had rejected the horse and sought a refund, but the defendant refused to rescind the transaction.  The Fourth Circuit held that costs for care of the horse that had not been incurred when the complaint was filed could be included because "a plaintiff may properly include as part of the amount in controversy costs which will not be incurred until after the suit is ended."  *Id.*  This holding does not apply here.  In *Broglie*, the plaintiff's claim for the future damages had accrued as of the time the complaint was filed.  Petkevicius is not seeking compensation for future costs that she or the class will have to incur even if Defendants' cease their wrongful conduct immediately.   Unlike in *Broglie*, any claim by a putative class member for damages arising out of a post-complaint purchase of Defendants' products simply did not exist when the complaint was filed.

Plaintiff's reliance on *Anderson v. Seaworld Parks and Entertainment, Inc.*, 132 F.Supp. 3d 1156 (N.D. Cal. 2015), is equally misplaced.  There, the Court was not calculating the amount in controversy based on any "continuing damage" to the plaintiff class.  Instead, it was calculating the cost of compliance with the injunction sought by the plaintiffs in the complaint.  *Anderson* is completely inapplicable to the calculation of the amount of the damages suffered by the putative class in this case.

For all of the foregoing reasons, a reasonable estimate of the amount in controversy for CAFA jurisdiction is equal to the California sales of the class products during the class period as of the filing of the lawsuit on November 3, 2014.  With her response to the Court's order to show cause, Plaintiff attached an expert report that included retail sales data by year for the class products from the Nielsen Company, along with the expert's estimate for a year of the class period when data was unavailable.  According to Plaintiff's damages expert's calculations and estimates, Defendants' total retail sales of the class products for the period of November 3, 2010, to October 4, 2014, is $3,128,725.  The expert does not break down a calculation for the additional month from October 4 to November 3, 2014,

but dividing the annual sales for the period of October 5, 2014 to October 3, 2015, by twelve yields a quotient of $82,782. Adding this amount to the sales for the previous three years and eleven months results in a total of $3,211,507.[3] This amount is a reasonable estimate of the amount in controversy related to the compensatory damages or restitution sought in the original complaints and FAC.

### C. Punitive Damages

Plaintiff also argues that because the original complaints and FAC all pray for punitive damages, which are allowed under the CLRA, an amount for punitive damages must be included in the amount in controversy calculation. Although "[i]t is well established that punitive damages are part of the amount in controversy in a civil action," *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001), "the mere possibility of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met." *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004);

---

[3] If not for the inclusion of NBTY as a defendant allegedly liable for false statements made on all six class products, the amount in controversy attributable to the Rexall products and to the Nature's Bounty products would likely have to be calculated separately because Rexall and Nature's Bounty would each only be severally liable for damages arising out of their own products. *Cf. Libby, McNeill, and Libby v. City Nat'l Bank*, 592 F.2d 504, 510 (9th Cir. 1978) (stating, in the context of a non-CAFA diversity jurisdiction analysis, that to aggregate the claims of one plaintiff against multiple defendants "the plaintiff's claims against the defendants must be common and undivided so that the defendants' liability is joint and not several."); *Mortazavi v. Fed. Ins. Co.*, No. 13cv3141-GPC(BGS), 2014 WL 5359458, at *3 (S.D.Cal. Oct. 20, 2014) (noting that the "general rule with respect to the aggregation of claims of a plaintiff against two or more defendants is that where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate.") (quoting *Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961)); *Vagle v. Archstone Cmtys., LLC*, No. CV 13-09044 RGK (AJWx), 2014 WL 463532, at *3 (C.D. Cal. Feb. 5, 2014) (remanding for lack of CAFA jurisdiction because defendants were severally liable notwithstanding conclusory alter ego allegation in complaint and amount in controversy related to claims against the removing defendant did not exceed $5,000,000). Indeed, it is not clear from the case law whether the inclusion of NBTY actually makes it proper to aggregate what would usually be several liability of Rexall and Nature's Bounty. However, because Defendants do not argue for several liability or for the creation of two separate classes, the Court assumes that Defendants agree that they (as a parent company and two subsidiaries) are jointly and severally liable for all damages suffered by the putative class, regardless of whether those damages arise out of the purchase of a Rexall product or a Nature's Bounty product.

*see also Geller v. Hai Ngoc Duong*, No. 10cv1876-BTM (CAB), 2010 WL 5089018, *2 (S.D. Cal. 2010) ("Simply pointing out that Plaintiff is seeking punitive damages without proffering any evidence regarding the amount is insufficient to establish that the potential punitive damage award will more likely than not increase the amount in controversy . . .").

The Court has not found any Ninth Circuit authority on point, but district courts in this circuit frequently have held that punitive damages should not be included in the amount in controversy unless the party with the burden presents evidence of a possible punitive damage award, usually in the form of punitive damages awards in factually analogous cases. *See, e.g., Johnson v. Hertz Local Edition Corp.*, No. 16-08323-CAS(JCx), 2017 WL 111296, at *4-5 (C.D. Cal. Jan. 9, 2017) (remanding case removed on diversity jurisdiction despite finding $39,150 in statutory and compensatory damages because "neither side has submitted evidence shedding light on what amount of emotional or punitive damages may be at issue in a[n analogous] case."); *Surber v. Reliance Nat. Indem. Co.*, 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000) ("In order to establish probable punitive damages, a party asserting federal diversity jurisdiction may introduce evidence of jury verdicts in cases involving analogous facts."). Courts even find simple citation of cases with punitive damages awards to be insufficient when no attempt is made to analogize the cases to case at hand. *See, e.g., Killion v. AutoZone Stores Inc.,* 2011 WL 590292, *2 (C.D. Cal. 2011) ("Defendants cite two cases . . . in which punitive damages were awarded, but make no attempt to analogize or explain how these cases are similar to the instant action.... Simply citing these cases merely illustrate[s] that punitive damages are possible, but in no way shows that it is likely or probable in this case. Therefore, Defendants' inclusion of punitive damages in the calculation of the jurisdictional amount is speculative and unsupported.") (citation omitted); *Molnar v. 1-800-Flowers.com, Inc.,* No. CV 08-0542 CAS (JCx), 2009 WL 481618, at *5-7 (C.D. Cal. Feb. 23, 2009) (remanding case removed pursuant to CAFA after finding compensatory damages plus attorneys' fees of approximately $3,670,000 because defendant, who had the burden of establishing jurisdiction, did not provide any evidence or attributes of the case supporting a punitive damage award to bring the total

amount in controversy to $5,000,000); *see also Hughes v. AutoZone Parts, Inc.*, No. CV1608009SJOKSX, 2017 WL 61917, at *4 n.2 (C.D. Cal. Jan. 4, 2017) (remanding case removed under CAFA while noting that the defendant's "recitation to Plaintiffs' request for injunctive relief, punitive damages, civil penalties, attorneys fees and costs do not move the needle, for [the defendant] admittedly 'has not attempted to estimate' these totals.").[4]

Here, the FAC lists punitive damages in its prayer for relief but does not mention them anywhere else.  Punitive damages are not recoverable under the UCL or FAL.  *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 915 (Ct. App. 2016) ("The remedies available in a UCL or FAL action are generally limited to injunctive relief and restitution."); *see also Clark v. Superior Court*, 50 Cal. 4th 605, 610 (2010) (holding punitive damages not available under UCL).  Nor are punitive damages available for Plaintiff's claim for breach of express warranty under the California Commercial Code. *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212 (Ct. App. 1991). However, as Plaintiff argues, "[a] consumer seeking damages under the CLRA may recover punitive damages." *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2016 WL 6441518, at *13 (S.D. Cal. Nov. 1, 2016) (citing Cal. Civ. Code § 1780(a)(4)).

Nevertheless, it is hardly clear from the FAC if it actually seeks damages under the CLRA, or just injunctive relief.  In the allegations specifically pertaining to each of the claims in the FAC, the FAC specifies the relief sought.  For each of the other five claims,

---

[4] The Tenth Circuit has also held that more than a mere prayer for punitive damages to allow them to be included in the amount in controversy. *See Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1248 (10th Cir. 2012) ("The defendant may point to facts alleged in the complaint, the nature of the claims, or evidence in the record to demonstrate that an award of punitive damages is possible. Absent such facts, punitive damages cannot be considered when calculating the amount in controversy for the purposes of CAFA jurisdiction.").  On the other hand, in *Keeling v. Esurance Ins. Co.*, 660 F.3d 273, 275 (7th Cir. 2011), the Seventh Circuit reversed a district court's remand for lack of CAFA jurisdiction because it was not "legally impossible" for the class to recover $3 million in punitive damages (the amount needed to put the total over $5 million) on account of fraud that cost them a little more than $600,000.  However, although the *Keeling* opinion does not specify the defendant had offered evidence to the district court as to a possible amount of punitive damages, the opinion cites other cases affirming punitive damages awards on similar claims with even higher multipliers.  *Id.*

the FAC specifically asks injunctive relief along with restitution or damages in the amount paid for the class products.  [Doc. No. 11 at ¶¶ 75, 82, 89, 100, 116.]  On the other hand, under the CLRA claim, the FAC asks for injunctive relief and attorneys' fees and costs, but does not mention damages or restitution.[5]  [*Id.* at ¶¶ 107, 109.]  Similarly, under the class allegations, the FAC asserts as common questions whether the class is entitled to restitution, attorneys' fees and expenses, but makes no mention of class members being entitled to punitive damages.

Further, the FAC does not even make conclusory allegations that Defendants acted wantonly, recklessly, intentionally, maliciously, or oppressively, let alone make any factual allegations that would support such allegations.[6]  *See generally Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 592–93 (C.D. Cal. 2011) ("[I]n order for Plaintiff to receive punitive damages under the CLRA, Plaintiff must establish that Defendant was 'guilty of oppression, fraud, or malice. . . .'") (quoting Cal. Civ.Code § 3294(a));  *Price v. Kawasaki Motors Corp.*, USA, No. SACV 10-01074-JVS, 2011 WL 10948588, at \*7 (C.D. Cal. Jan. 24, 2011) ("[The plaintiff] also seeks punitive damages under Civil Code section 1780(a)(4), which authorizes recovery of punitive damages when a person suffers damage as a result of unlawful acts under the CLRA.  A plaintiff bringing an action in federal court

---

[5] The FAC also states that the CLRA has enhanced penalties of up to $5,000 for conduct directed at senior citizens or the disabled.  However, as the Court pointed out in the OSC, the FAC does not propose a class or subclass of disabled or senior citizens, does not mention this penalty in the prayer for relief, does not give any indication of the size of any class of disabled or senior citizens, and does not establish how Petkevicius (as neither a senior citizen nor disabled) would have standing to represent such a class.  Because Plaintiff did not address any of these concerns in her response to the OSC or argue that some amount attributable to this penalty should be included in the amount in controversy, the Court will not consider them to determine whether the jurisdictional minimum is met.

[6] The original complaints both alleged under the CLRA claim that "Defendant's conduct is fraudulent, wanton and malicious" and stated that Plaintiff intended to amend the complaint to add claims for actual, punitive and statutory damages, as appropriate."  [Doc. No. 1 at ¶¶ 69-70; Case No. 14cv2482, Doc. No. 1 at ¶¶ 67-68.]  This statement would imply that the original complaints did not already seek punitive damages under the CLRA.  Meanwhile, contrary to these statements in the original complaints, the FAC removed the "fraudulent, wanton and malicious" allegation and did not mention punitive damages in connection with the CLRA claim.

may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.") (internal citations and quotation marks omitted).[7]   Nor does the FAC allege that Defendants' wrongful conduct was committed, authorized or ratified by an officer, director, or managing agent of Defendants, as required by California Civil Code § 3294.  *Hardt v. Chrysler Grp. LLC*, No. SACV1401375SJOVBKX, 2015 WL 12683965, at *9 (C.D. Cal. June 15, 2015) ("In order to recover punitive damages from a corporation, Cal. Civ. Code § 3294(b) requires that the wrongful conduct must have been committed, authorized or ratified by an officer, director, or managing agent of the corporation."); *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999) ("For corporate punitive damages liability, [§ 3294(b)] requires that the wrongful act giving rise to the exemplary damages be committed by an 'officer, director, or managing agent.'").

Finally, even assuming that the FAC in fact creates a legal possibility that the class could recover punitive damages in the first instance, Plaintiff offers no evidence, only speculation, as to the possible amount of a punitive damage award.  Plaintiff does not cite to any jury verdicts awarding punitive damages under the CLRA or even any punitive damage awards in consumer class actions generally.  Instead, Plaintiff relies entirely on one district court case where the court used a 1:1 ratio to estimate punitive damages in relation to compensatory damages when determining the amount in controversy under CAFA.  *Bayol*, 2015 WL 4931756, at *9.  The *Bayol* opinion did not base this ratio on any actual punitive damage verdicts, holding only that a 1:1 ratio was "conservative."  The *Bayol* court's willingness to estimate punitive damages without any evidence of punitive damage awards in analogous cases makes it an outlier.  Regardless, *Bayol* is distinguishable from the FAC here because the *Bayol* court held that the operative complaint's allegation

---

[7] Although the FAC lists one of its three UCL claims as for "Fraudulent Business Acts and Practices," it never explicitly alleges that Defendants defrauded Plaintiffs or even that Defendants' alleged deception of the class members was malicious or with fraudulent intent.

that the defendant acted "intentionally, knowingly and unlawfully" was sufficient to support a potential punitive damage award. In so holding, the court explicitly noted that it did not agree with the defendant's assertion that the plaintiff was "simply adding the magic words 'punitive damages' in order to manufacture jurisdiction." *Id.* at *4.

In sum, the FAC does not mention punitive damages anywhere but in its prayer for relief. Although it asserts a claim under the CLRA, which allows for the recovery of punitive damages, the FAC does not contain any allegations, conclusory or factual, that would support an award of punitive damages. Further, even assuming the allegations in the FAC actually support a punitive damage award, Plaintiff provides no evidence as to a possible amount of such award, using mere speculation and conjecture to argue that a punitive damage award puts the total amount in controversy over $5,000,000. Based on the allegations in the FAC and the complete lack of evidence concerning the amount of a punitive damage award, to include an amount for punitive damages in the amount in controversy here would be akin to a holding that virtually any class action that asserts a claim for which punitive damages are allowed and uses the words "punitive damages" in its prayer for relief satisfies the CAFA jurisdictional minimum.[8] The jurisdictional threshold is not so low.

Because notwithstanding the existence of the CLRA claim and prayer for punitive damages, the FAC does not contain any allegations that would support a punitive damage claim and Plaintiff has not provided any evidence of punitive damage awards in analogous cases, inclusion of punitive damages in the amount in controversy is not proper here.

---

[8] Because punitive damage awards of even five times economic damages are not unheard of, setting such a low threshold for CAFA jurisdiction would allow a party to invoke jurisdiction any time $700,000 (or less) in economic damages were possible and punitive damages were included in the prayer. *See generally Exxon Shipping Co. v. Baker*, 554 U.S. 471, 500 (2008) (citing one study that found "14% of punitive awards in 2001 were greater than four times the compensatory damages"); *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1044 (9th Cir. 2003) (holding that ratio of slightly more than seven to one of punitive damages to compensatory damages was not "constitutionally excessive").

## D. Attorney's Fees

"Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Galt G/S v. JSS Scandanavia*, 142 F.3d 1150, 1156 (9th Cir.1998).  Here, the CLRA authorizes an award of attorney's fees to a prevailing plaintiff.  Cal. Civ. Code § 1780(e).   Both parties argue that the proper fee estimate is equal to 25% of the total amount in controversy on the claims.  *See Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx), 2009 WL 481618, at *5 (C.D. Cal. Feb. 23, 2009) (holding that 25% is a fair estimate of attorney's fees when determining amount in controversy); *but see Hughes v. McDonald's Corp.*, 2014 WL 3797488, at *8-9 (stating that "the only fees to be considered as part of the amount in controversy calculation are those incurred as of the date of removal.").   In other words, according to parties, if the non-attorney fee amount in controversy on the claims in the complaint exceeds $4 million, the total amount in controversy for CAFA jurisdiction is satisfied because an additional $1 million in fees should be added to the total.  The Court need not reach this issue because Plaintiff has not satisfied its burden to prove by a preponderance of the evidence that it was legally possible for the putative class to recover $4 million in economic damages when the original complaint was filed.

As discussed *supra*, the amount of economic damages in controversy for the purposes of determining CAFA jurisdiction at the time the complaint was filed was $3,211,507.  Adding a 25% attorney fee award to this amount brings the total only to $4,014,383.75.

## III. Conclusion

Because the amount in controversy at the time the complaint was filed was no more than $4,014,383.75 even including a 25% attorney fee award, this Court does not have subject matter jurisdiction over this case.  Accordingly, it is hereby **ORDERED** that the

case is **DISMISSED** without prejudice to re-filing in state court.  All pending motions are **DENIED AS MOOT**.

It is **SO ORDERED.**

Dated:  March 24, 2017

Hon. Cathy Ann Bencivengo
United States District Judge

3:14-cv-02616-CAB-(RBB)